# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

KEITH FANGMAN, et al.,                              Case No. 1:08cv702

        Plaintiffs,                           JUDGE MICHAEL R. BARRETT

   -vs-

CITY OF CINCINNATI,

        Defendant.

## OPINION AND ORDER

This cause came before the Court upon the Motion of Plaintiffs, Keith Fangman and Paul D. Graves, Jr., for a Temporary Restraining Order and Preliminary Injunction against Defendant, the City of Cincinnati (Doc. 2). Plaintiffs move for a temporary restraining order prohibiting the Defendant from enforcing Article V, Section 4 of the Cincinnati Charter and No. 2.2 of the City of Cincinnati Human Resources Policies and Procedures (hereinafter referred to as the "Policy") against the Plaintiffs. A hearing was held on October 15, 2008. The Plaintiffs seek to donate money to and distribute campaign literature for federal, state and county candidates.

Plaintiffs are city employees who are not elected and do not serve in the office of a council member or otherwise serve in the Legislative Service. Plaintiff, Keith Fangman, seeks to donate funds to the John McCain presidential campaign and Plaintiff, Paul Groves seeks to donate funds to the Barack Obama presidential campaign. Plaintiffs also seek the opportunity to donate funds to other partisan political candidates on the fall 2008 ballot. These include candidates for both federal and state offices. Plaintiffs also seek the opportunity to distribute campaign literature for the candidates they support.

Plaintiffs claim that the distribution of literature described above would be done by them in their capacity as individual, private citizens and would not be pursued while on duty or at the workplace. See, Plaintiffs' Declarations attached to Motion for Temporary Restraining Order (Doc. 2).

A.  BACKGROUND

In 1924 the citizens of Cincinnati changed their form of city government by amending the City Charter. They then adopted a new charter in 1926 which incorporated and extended the amended provisions adopted in 1924. Prior to this time Cincinnati had earned a reputation for corruption during the years that George B. Cox functioned as a city "boss" coordinating his political enterprise, first, as a member of city council, and, later, through non-governmental positions. Despite numerous scandals, he functioned in this manner until his retirement from politics. Cox would trade favors and information as city services increased and he routinely provided social services for votes and made profits on plans for city infrastructure developments. (See Doc. 7-5). As part of this corrupt enterprise, Cox would trade City employment positions for votes and would expect his hires to contribute fundraising dollars to his political structure. To prevent this abuse from continuing, the 1926 Cincinnati City Charter provided a blanket prohibition for all city employees in the administrative service from donating money for any political party or candidate as follows:

> Article V. Section 4. No person in the administrative service shall directly or indirectly give, solicit or receive, or in any manner concerned in giving, soliciting or receiving any assessment, subscription or contribution for any political party of for any candidate.

At some point the City developed its Human Resources Policies and Procedures

which also prohibits employees from engaging in political activity. Specifically, the Policy states that, "No City of Cincinnati employee, other than elected officials or those in the Legislative Service, may participate in partisan political activity". (Policy No. 2.2). This partisan activity includes campaign contributions and distribution of campaign literature. (Policy No. 2.2(1)(A)[1] and (1)(B)). Policy No. 2.2 was amended on October 7, 2008, in response to the concerns raised by Plaintiffs, to permit city employees to make "voluntary financial contributions to candidates for office in non-Ohio federal elections. . ." which include the United States presidential primary and general election. (Policy No. 2.2(1)(A)). The ban on distributing campaign literature was narrowed to "partisan campaign literature" as opposed to the more general "campaign literature" as was previously set forth in the policy. (Policy No. 2.2(1)(B)).

B.  LEGAL ANALYSIS

   1.  Legal Standard

The standard for evaluating a request for a temporary restraining order and/or preliminary injunctive relief under Fed. R. Civ. P. 65 is well established in this Circuit. The elements necessary to obtain such relief are as follows: (1) a strong or substantial likelihood of success on the merits; (2) irreparable harm has been suffered and will continue to suffer unless Defendant's conduct is enjoined; (3) the issuance of the temporary restraining order will not result in substantial harm to others; and (4) that the public interest is advanced by the injunction. Fed.Civ.R. 65, *Michigan State AFL-CIO*

---

[1]The Policy provided to the Court (See Doc.2-2, p3 or Exhibit 2 from the hearing) contains two provisions marked as (1)(A), the Court is not concerned with the second (1)(A) which prohibits "acting as officers in a partisan election."

*v.Miller,* 103 F.3d 1240, 1249 (6th Cir. 1997). The foregoing factors are not prerequisites, but rather are factors which the Court should balance. *Chabad of S. Ohio & Congregation Lubavitch v. City of Cinicnnati*, 363 F.3d 427 (6th Cir. 2004).

    2.    *AFSCME* Line of Cases

There is a line of cases that is helpful to the matter before the Court which the Court will discuss in detail herein. *See Cincinnati v. Ohio Council 8, AFSCME*, 61 Ohio St.3d 658 (Ohio, 1991) and *Cincinnati v. Ohio Council 8, AFSCME*, 93 Ohio App.3d 162 (1st Dist, 1994)[2]. These actions arose from a check off provision contained in collective bargaining agreements between the City and certain employee groups. The City of Cincinnati and the union negotiated four successive collective bargaining agreements containing provisions which allowed city employees, who are members of the unions, to voluntarily request that a portion of the paycheck be deducted and paid to their unions' political action committee, PEOPLE, which then made political contributions with said funds. The issue involved whether a provision in a collective bargaining agreement, such as the check off provision, that is permissible under the Public Employees' Collective Bargaining Act, O.R.C. §4117, prevails over a conflicting provision in the municipal home rule charter.

Initially, the City prevailed at the trial court but the appellate court reversed. The Supreme Court of Ohio then reversed the appellate court with a discussion of collective bargaining issues which are not germane to the issue at hand. However, the Supreme Court went on to discuss the scope and purpose of the Little Hatch Act. "The Little Hatch

---

[2]In 1991, the Ohio Supreme Court remanded the matter to state court for further determinations. The 1994 First District case is the appeal from the state court after the remand.

Act was enacted by referendum as part of a comprehensive revision of the Cincinnati City Charter of 1926. At that time, Cincinnati's elected city government had been severely corrupted by spoils-system politics". *AFSCME*, 61 Ohio St.3d at 667. "The new charter replaced the patronage system with a council- manager plan of government. The role of the Little Hatch Act in the reform program was to divorce the daily work activities of city employees from the process of electing the public officials who directed them." *Id.* The Court went on to discuss the limitations government can impose on First Amendment protected activity.

> The First Amendment protects the right to make financial contributions to political candidates and causes. *Buckley v. Valeo* (1976), 424 U.S. 1, 14, 96 S.Ct. 612, 632, 46 L.Ed.2d 659. The Little Hatch Act, like the federal Hatch Act and other similar laws, limits the First Amendment right of public employees to engage in partisan politics in order to protect the efficiency and integrity of the public service. *U.S. Civ. Serv. Comm. v. Natl. Assn. of Letter Carriers*, 413 U.S. 548, 93 S. Ct. 2880, 37 L. Ed.2d 796; *Gray v. Toledo* (N.D. Ohio 1971), 323 F.Supp. 1281, 1284-85, 28 Ohio Misc. 141, 143-145, 57 O.O. 2d 239, 241-242 (citing *United Public Workers v. Mitchell* [1947], 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754). While this is a sufficient government interest to justify an encroachment on First Amendment rights, *Letter Carriers, supra*; *Gray, supra,* at 1258, 28 Ohio Misc. at 144-145, 57 O.O.2d at 241-242, not all restrictions on the political activities of government employees are automatically valid. The Constitution requires that the restriction bear a direct relationship to this interest, and be the least restrictive means necessary to accomplish this end. *Gray, supra*, at 1285, 28 Ohio Misc. at 145, 57 O.O. 2d at 241-242 (citing *Fort v. Civ. Serv. Comm.* [1964], 61 Cal.2d 331, 38 Cal. Rptr. 625, 392 F.2d 285; *Minielly v. State*, [1966] 242 Ore. 490. 411 P.2d 69.
>
> As noted *supra*, the objective of the Little Hatch Act is to prevent the emergence of a political patronage system in Cincinnati city government. In furtherance of that objective, it is unquestionable that the city may limit its employees' participation in local partisan politics without violating the Constitution. *E.g., Northern Ohio Patrolmen's Benevolent Assn. v. Wayne Cty, Sheriff's Dept.* (1986), 27 Ohio App.3d 175, 27 OBR 213, 500 N.E.2d 404; *Gray, supra*; *Ferguson Police Officers Assn. v. Ferguson*, (Mo.App 1984), 670 S.W.2d 921.

> Where a city or other unit of local government purports to prohibit its employees' participate in non-local partisan politics, the authorities are divided. Some courts have found such restrictions unconstitutionally overbroad, taking the view that participation by local government employees in politics at the state and national level does not threaten the integrity of the local government. See *Mancuso v. Taft* (C.A.1, 1973), 476 F.2d 187; *Hobbs v. Thompson*, (C.A. 5, 1971), 448 F.2d 456; *Kinnear v. San Francisco* (1964), 61 Cal.2d 341, 38 Cal. Rptr. 631, 392 P.2d 391; *Minielly, supra; Martin v. State Bd of Elections* (1977), 119 R.I. 556, 381 A.2d 234. Other courts have upheld them, finding a sufficient interest to warrant the restrictions because support for non-local candidates might benefit local candidates or office holders with similar political interest. See, *Reeder v. Kansas City Bd. of Police Commrs.* (C.A. 8, 1984), 733 F.2d 543; *Wachsman v. Dallas* (C.A. 5, 1983), 704 F.2d 160; *Pollard v. Bd. of Police Commrs.* (Mo. 1984), 665 S.W.2d 333. While our research has not uncovered a reported case involving an attempt by a state of local government to prohibit its employees from contributing to partisan campaigns in other states, we suspect any such attempt would offend the principle of interstate comity as well as the constitutional doctrine prohibiting overbreadth.
>
> Therefore, to the extent that PEOPLE funds are used to support candidates in non-local elections, the constitutionality of the Little Hatch Act becomes an issue.

*AFSCME*, 61 Ohio St.3d at 669-670. Lacking sufficient facts in the record regarding the use of PEOPLE funds the case was remanded. On remand the trial court further held the following:

> The PEOPLE committee makes contributions to candidates for federal office and to candidates for state or local office where state law prohibits the use of the Union's treasury funds for that purpose. The PEOPLE committee also makes contributions to the federal accounts of national, state and local political parties and campaign funds which make contributions in federal elections and to local parties or state funds which can be used in elections to federal office or to state office in those states which prohibit treasury contributions. The PEOPLE committee does not make contributions to or expenditures on behalf of candidates for state or local office in Ohio, nor has it made such contributions or expenditures at anytime relevant to this proceeding.

***

> The City of Cincinnati has failed to show that the political activity it seeks to restrict directly implicates its interest in the integrity and efficiency of the civil service system. The City employees' contribution to their union's political action committee - - which then expends those funds in elections to national office and to state or local office in states other than Ohio - - do not jeopardize the city's goals of ensuring that political patronage does not replace the civil service system based upon merit. Nor is the City's restriction narrowly tailored to serve that government interest. The City's claim that its restriction is justified because the PEOPLE committee made a contribution to a local official who was running for national office, and to national issue-based organizations which have local chapters in Cincinnati are too attenuated to justify a prohibition on city employees making voluntary contribution to the PEOPLE committee. Given the importance of the constitutional rights implicated, the City's interpretation of its Charter is unconstitutional.

*Cincinnati v. Ohio Council 8, AFSCME*, Case No. A-8306290, Hamilton County Court of Common Pleas, at 3, 6 and 7 (1992). The First District of Appeals affirmed the trial court concluding, that "the provision does not directly relate to the city's goal of insuring the integrity of the civil service system and preventing a return of corrupt spoils-system politics: candidates for federal office and federal officeholders do not supervise the daily work of city employees." *AFSCME*, 93 Ohio App.3d at 165.

      3.      Article V, Section 4 and Policy No. 2.2(1)(A)

The Plaintiffs challenge the constitutionality of Article V, Section 4 of the City Charter and Human Resources Policies and Procedures No. 2.2 as infringing on their First Amendment Rights. Specifically, the Plaintiffs want the opportunity to donate to and/or distribute the literature of Federal congressional candidates in Ohio, statewide candidates and county candidates, in addition to presidential candidates and other non-Ohio candidates. The City argues that it has a legitimate government interest in restricting its employees' First Amendment rights and that this interest outweighs the Plaintiffs' right to free speech.

The First Amendment prevents the government, except in the most compelling circumstances, from wielding its power to interfere with its employees' freedom to believe and associate, or to not believe and not associate. *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 76, 110 S. Ct. 2729 (1990). A significant impairment of the First Amendment rights must survive exacting scrutiny. *Buckley v. Valeo*, 424 U.S. 1, 64-65 (1976); *NAACP v. Alabama*, 357 U.S. 449, 460-461 (1958). Any restriction imposed by the government upon its employees' political activity must be directly related to the goal of protecting the efficiency and integrity of the public service. *Gray v. City of Toledo*, 28 Ohio Misc. 141, 323 F.Supp. 1281, (1971). As the Sixth Circuit observed in a police case:

> The Courts have long recognized that a public employer may constitutionally limit the political activity of its public employees. *See Broadrick v. Oklahoma*, 413 U.S. 601 (1973); *United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers*, 413 U.S. 548 (1973); *United Public Workers v. Mitchell*, 330 U.S. 75 (1947). Even when off duty and out of uniform, public employees may be restricted in their public political activity in the interests of an efficient government free from hints of corruption, influence, and connection. *Letter Carriers*, 413 U.S. at 565-566 (footnote omitted).

*Randall v. City of Cookeville*, 991 F.2d 796 (Table), 1993 WL 94321, *2 (6th Cir., unpublished).

The Tenth Circuit in *Horstkoetter v. Dept of Public Safety*, 159 F.3d 1265 (10th Cir., 1998) listed the government's interest in curtailing employee political speech. Those interest include: 1) the protection of public employees' job security; 2) the eradication of corruption; 3) the promotion of efficiency in government offices; and 4) the encouragement of impartiality, and public perception of impartiality, in government services. *Id*. at 1272. In *U.S. Civil Service Commission v, National Ass'n of Letter Carriers*, 413 U.S. 548 (1973), the Supreme Court observed that Congress could lawfully restrict the following activities:

> organizing a political party or club; actively participating in fund-raising activities for a partisan candidate or political party; becoming a partisan candidate for, or campaigning for, an elective public office; actively managing the campaign of a partisan candidate for public office; initiating or circulating a partisan nominating petition or soliciting votes for a partisan candidate for public office; or serving as a delegate, alternate or proxy to a political party convention. Our judgment is that neither the First Amendment nor any other provision of the Constitution invalidates a law barring this kind of partisan political conduct by federal employees.

*Letter Carriers, supra* at 556. In *Broadrick v. Oklahoma*, 413 U.S. 601 (1973) and *Letter Carriers*, the Supreme Court addressed restrictions on political speech of government employees. In *Letter Carriers*, the Court upheld an older version of the Federal Hatch Act, indicating that a statute is valid even if the restrictions include activities such as organizing a political party or club, participating in fundraising for a partisan candidate or group, or serving as a delegate, alternate or proxy to a political convention. In *Broadrick*, the Court upheld similar restrictions with regard to state employees. As discussed above, the Ohio Supreme Court has applied these U.S. Supreme Court decisions to Art. V, Section 4 of the Cincinnati Charter in *Cincinnati v. Ohio Council 8, AFSCME*, 61 Ohio St.3d 658 (1991).

As previously set forth above, the Ohio Supreme Court held that the City of Cincinnati had an interest in restricting the political activity of its employees in order to "protect the efficiency and integrity of the public service." *Id.* at 669. However, the Court continued, "[t]he Constitution requires that the restriction bear a direct relationship to this interest and be the least restrictive means necessary to accomplish this end." *Id*. The Court then remanded the charter challenge for further development of the record. Three years later, the First District Court of Appeals affirmed the trial court ruling on remand that the Charter provision was unconstitutional as overbroad. The Appellate Court held that

restricting certain donations does not "directly relate to the city's goal of insuring the integrity of the civil service system and preventing a return of corrupt spoils-systems politics: Candidates for federal office and federal office holders do not supervise the daily work of city employees." *Cincinnati v. Ohio Council 8, AFSCME*, (1994) 93 Ohio App.3d at 165.

Therefore, based upon the holdings in the *AFSCME* cases, both Article V, Section 4 of the City Charter and Policy No. 2.2(1)(A) are unconstitutional as overbroad. Section 4 was unconstitutional in 1994 and remains unconstitutional today. As for Policy No. 2.2, it makes no sense to permit donations to candidates for non-Ohio federal elections and to exclude donations to candidates for Ohio federal elections and out-of-state elections since none of those candidates "supervise the daily work of city employees." The Court, however, does agree with the City that it does have a legitimate government interest in preserving the integrity of the work place by restricting donations to candidates running for city office or city office holders running for another office. Although, this issue is not presently before the Court[3], the Court finds that such a limitation would be an example of a constitutional restriction.

Laws that are overbroad cannot be enforced unless the offending provisions can be severed. *Reno v. American Civil Liberties Union*, 521 U.S. 844, 883, 117 S. Ct. 2329 (1997); *New York v. Ferber*, 458 U.S. 747, 102 S. Ct. 3348. In determining whether severability is appropriate under Ohio law, the court must consider the following questions:

(1) Are the constitutional and the unconstitutional parts capable of separation

---

[3] There are no City Council races this election and no city officials running for another office. See Exhibit 4 from the hearing.

so that each may read and may stand by itself? (2) Is the unconstitutional part so connected with the general scope of the whole as to make it impossible to give effect to the apparent intention of the Legislature if the clause or part is stricken out? (3) Is the insertion of words or terms necessary in order to separate the constitutional part from the unconstitutional part, and to give effect to the former only?

*Women's Medical Professional Corporation v. Voinovich*, 130 F.3d 187, 202 (6th Cir., 1997); *quoting Geiger v. Geiger*, 160 N.E. 28, 33 (Ohio, 1927). After consideration of the questions set forth above, the unconstitutional provisions of Article V, Section 4 of the Charter can not be severed. Therefore, no part of Section 4 can be enforced. However, Policy No. 2.2(1)(A) can be severed from the remaining sections of Policy No. 2.2.[4]

Thus, the Plaintiffs have demonstrated a substantial likelihood of success on the merits as to the unconstitutionality of Article V, Section 4 of the Charter and Policy No. 2.2(1)(A) and have shown that they will suffer irreparable harm if they are prohibited from making certain campaign contributions. Furthermore, the relief requested will cause no others to suffer substantial harm and would serve the public interest. Therefore, the temporary restraining order and preliminary injunction is granted as to contributions.

    4.    <u>Policy No. 2.2(1)(B)</u>

As to the issue of partisan campaign activity contained in Policy No. 2.2(1)(B), the City asserts that its limitation on partisan campaign activity is necessary to protect the integrity and efficiency of City government. While there may be some inconsistency between what is prohibited and what is permitted under Policy No. 2.2, both the Policy and the Ohio Administrative Code, which is based on the O.R.C. 124.57, ban partisan political

---

[4]This holding does not mean that solicitations are now permitted as solicitations are still governed by O.R.C. §3517.092 which generally prohibits candidates for elected office from soliciting and/or receiving contributions from public employees.

campaigning. Plaintiffs claim that they wish to perform partisan campaign activities on their own time as private citizens. However, the City argues that City employees, who are known to be employees of the City, cannot separate themselves from the City merely by being off duty. Furthermore, their private endorsement might appear to a voter to be a City endorsement or City approval of various aspects of partisan politics. The City raises valid concerns here and the Court cannot determine, at this time, that Plaintiffs have a substantial likelihood of success on the merits on this issue. Therefore, the temporary restraining order and preliminary injunction is denied as to partisan campaign activity.

C. <u>CONCLUSION</u>

Therefore, upon consideration of the motion of the Plaintiff for a temporary restraining order and preliminary Injunction (Doc. 2), the responses thereto, the testimony and evidence presented at the hearing, and having found for the specific reasons required under Federal Rule of Civil Procedure 65(b) as set forth above, Plaintiffs' Motion is GRANTED, in part, and DENIED, in part.

IT IS HEREBY ORDERED that the Defendant, City of Cincinnati, its officers, agents, servants, employees, attorneys and those persons in active concert or participation with the Defendant who receive actual notice of this Order are temporarily restrained and preliminarily enjoined from enforcing Article V, Section 4 of the City Charter and Policy No. 2.2(1)(A) of the City Human Resources Policies and Procedures in any manner that restricts city employees in their private individual capacity from making financial contributions to federal, state and county candidates.

**IT IS SO ORDERED.**

*s/Michael R. Barrett*
MICHAEL R. BARRETT, Judge
United States District Court